laGOTHARD, Judge.
In this slip-and-fall matter, plaintiff appeals a trial court judgment rendered in her favor as being too low. For the following reasons, we affirm.

FACTS

On September 3, 1989, plaintiff, Donnacita Mistretta, slipped and fell on a “handicapped ramp” as she was leaving the restaurant owned by defendant, Shoney’s, Inc., on Veterans Memorial Boulevard in Jefferson Parish. On August 31, 1990, plaintiff filed suit against defendant in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana for the injuries she allegedly sustained as a result of the accident. The matter was tried before a jury on November 15 and 16, 1993. After trial, the jury returned a verdict in favor of plaintiff and awarded her $40,000.00 in damages, consisting of $8,000.00 for past medical expenses; | ⅞$12,000.00 for past pain and suffering, mental anguish and loss of life’s pleasures; and $20,000.00 for future pain and suffering, mental anguish and loss of life’s pleasures. The trial court adopted the verdict by a judgment rendered November 18, 1993.
Both plaintiff and defendant filed motions for judgment notwithstanding the verdict, or alternatively for new trial. Additionally, plaintiff filed a motion for additur. All motions were denied by the trial court on January 20, 1994. Plaintiff thereafter brought this appeal, essentially arguing that the dam *302 ages awarded were abusively low[1]. The adequacy of plaintiffs damages is the only issue before us on appeal.

PROCEEDINGS BELOW

At trial, plaintiff and defendant stipulated that plaintiffs medical bills incurred after the September 3, 1989 accident totalled $21,-304.94. However, defendant denied being responsible for any of the bills. Regarding plaintiffs medical condition, plaintiff offered the testimony of Dr. Toussaint Leclercq, who was qualified at trial as an expert in the field of neurosurgery. Dr. Leclercq first saw plaintiff on July 16, 1990, approximately ten months after her accident, after conservative treatment did not alleviate her pain. He testified that plaintiff was complaining of pain in her neck, arm and lower back, and that she related the pain to 14the September 3, 1989 accident. Dr. Leclercq testified that an MRI[2] (taken after plaintiffs first visit) of plaintiffs cervical spine showed a disk herniation at the C5-6 level, which he felt was impinging on a nerve, and contributing to plaintiffs neck and arm pain. He recommended that plaintiff undergo surgery to repair the herniated disk.
On June 24, 1991, Dr. Leclercq performed the surgery on plaintiff. At trial, he testified that the surgery was a success, that plaintiffs recovery was satisfactory, but that nine months after surgery, plaintiff was still complaining of some neck pain, as well as some low back pain. Dr. Leclercq discharged plaintiff from his care in March of 1992, but saw her again in July of 1993, after she was involved in an automobile accident. Dr. Le-clercq also testified that at the time of her surgery, plaintiff suffered from degenerative disk disease in her neck, which he described as abnormalities in the disk, brought about by “age, but also sometimes with an accident.”
Dr. Leclercq did not believe that any prior accidents in which plaintiff had been involved caused the injuries for which plaintiff underwent the surgery. On cross-examination, however, Dr. Leclercq admitted that plaintiff failed to inform him of four prior accidents in which she suffered neck injuries.
Testifying for the defense regarding plaintiff’s medical condition was Dr. Thomas B. Whitehead, whose deposition was read into the record at trial. Dr. Whitehead treated plaintiff after two automobile accidents, one which occurred on April 25, 1987, and the other which occurred on February 18, 1989. Regarding the first accident, Dr. Whitehead testified that plaintiff “was having headaches and a degree of cervical spasm and strain, a degree of lumbar strain, and some bruises.” |BHe treated her for about one month, giving her muscle relaxers and recommending heat and physical therapy. He next saw plaintiff on February 18, 1989, in the emergency room of Methodist Hospital after plaintiff was involved in another automobile accident. X-rays taken on that date “showed rather marked degenerative disk disease at the C5-C6 level on the cervical spine. This was, according to the radiologist, obviously, chronic disease and is consistent with prior injury.” Dr. Whitehead referred to plaintiffs disk disease at that time as “rather advanced.” Dr. Whitehead further testified that it was not possible to tell from the x-ray whether plaintiff had a herniated disk at that time.
Dr. James Monroe Laborde, orthopedic surgeon, also testified for the defense at trial, via videotaped deposition. Dr. Laborde was tendered without objection as an expert in the field of orthopedic surgery: He examined plaintiff on March 15, 1991, three months prior to her cervical surgery. He testified that his examination of plaintiff “revealed no objective abnormality indicative of a physical problem, but there were multiple inconsistent findings indicating the presence of a psychological cause for her abnormalities and, therefore, for her pain.” After taking *303 plaintiffs medical history, performing the physical examination, and reviewing various medical records and diagnostic tests of plaintiff, Dr. Laborde found no objective evidence of an injury.
In his review of the October 31, 1990 MRI taken of plaintiffs cervical spine, Dr. La-borde felt that there was some mild backward displacement and some disk space narrowing at C5-6, which were consistent with the aging process. However, Dr. Laborde felt that the MRI “did not show a fracture or other objective evidence of injury.” Dr. La-borde’s review of x-rays taken of plaintiff on February 18,1989, “showed marked degenerative disk disease at C5-6 ... essentially prov[ing] that the ^degenerative arthritis in the neck pre-existed the accident” of September 3, 1989. He further testified that there was no significant difference in the x-rays taken six months prior to the September 3, 1989 accident and those taken subsequent to it (on September 5, 1989 and March 16, 1990).

ANALYSIS

It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Stobart v. State Through DOTD, 617 So.2d 880, 882 (La.1993), citing Rosell v. ESCO, 549 So.2d 840 (La.1989). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. The reviewing court must always keep in mind that if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart, supra at 882-83 (citations omitted).
Regarding the amount of medical damages awarded, after reviewing the record, we cannot say that the jury was unreasonable in awarding $8,000.00 to plaintiff. There was conflicting medical testimony regarding the extent of injuries suffered by plaintiff, and whether the surgery performed by Dr. Leclereq was necessitated solely by the September 3, 1989 accident. As stated, evidence was introduced that plaintiff was involved in an automobile accident approximately six months prior to the September 3, 1989 accident, and x-rays showed marked degenerative disk disease at the C5-6 level (the level at which Dr. Leclereq subsequently performed the surgery). Evidence of other, prior neck injuries was |7also introduced at trial. The jury was therefore not unreasonable in allocating only a portion of plaintiffs total medical bills incurred after the September 3, 1989 accident to defendant.
Likewise, and for the above-stated reasons, we cannot say that the jury was unreasonable in awarding $32,000.00 in general damages to plaintiff for the September 3, 1989 accident. When reviewing general damage awards,
[t]he initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Youn v. Maritime Overseas Corp., 623 So.2d 1257,1260 (La.1993) (citations omitted).
Regarding the standard for appellate review of general damage awards, in Youn, supra at 1261, the Louisiana Supreme Court held that:
the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
After a thorough review of the entire record, we find that the amount of damages, both special and general, awarded to plaintiff *304 for the September 3, 1989 accident was not unreasonable. Therefore, for the foregoing reasons, the judgment of the trial court is hereby affirmed.
AFFIRMED.

. Plaintiff's two assignments of error are: 1) The jury erred when it awarded the plaintiff $8,000.00 in past medical expenses when evidence was introduced that $21,304.94 of past medical expenses had been incurred and there was no evidence upon which the jury could base a finding that only $8,000.00 worth of those medicals were incurred as a result of the accident in question; and 2) The juty erred when it awarded $32,000.00 in general damages, including past and future, which amount was inadequate and not supported by the evidence.

. "Magnetic Resonance Imaging”